McCULLOUGH, Judge.
On 24 June 2014, a jury found Connie Prentice Reaves ("defendant") guilty of assault with a deadly weapon inflicting serious injury. On appeal, defendant contends the trial court erred by: A) failing to conduct a proper inquiry of his election to proceed pro seas required under N.C.G.S. § 15A-1242 ; B) finding that defendant signed a waiver of his right to counsel; C) finding defendant forfeited his right to counsel; and, D) improperly calculating his prior record level for sentencing. We find defendant did not clearly and equivocally elect to proceed pro seand the trial court did not err in finding that defendant forfeited his right to counsel. However, we vacate the sentence imposed by the trial court and remand for a new sentencing hearing.
I. Background
The state's evidence tended to show the following events: On the evening of 4 January 2013, defendant went to Mary's Arcade in Tabor City, where he played poker with Terry Riggins. Defendant lost approximately $10.00 on the game and after roughly two hours of playing, the two got into an argument as to who had won. In the course of the argument, Riggins pushed defendant, then defendant pulled out a gun and pointed it at Riggins. Defendant shot Riggins once in the stomach and fled the scene. The bullet punctured Riggins' intestine and bladder, and remained lodged in his hip at the time of trial.
Defendant was arrested and thereafter indicted for assault with a deadly weapon inflicting serious injury on 13 March 2013.
On 24 January 2013, attorney Fred C. Meekins, Jr. was appointed to represent defendant in this matter. Between then and 15 February 2013, when Mr. Meekins filed a motion to withdraw as counsel, defendant engaged in abusive conduct toward Mr. Meekins. On at least two occasions, Mr. Meekins had to hang up the telephone while talking to defendant because of his abusive language and because he would not listen to counsel. Furthermore, on at least one occasion, defendant used abusive language to Mr. Meekins' secretary to the extent that she asked to not answer defendant's calls. Later, at a probable cause hearing, defendant refused to listen to Mr. Meekins, accused him of conspiring with the District Attorney against defendant's interests, and said he was planning on hiring a "real f* * *ing lawyer." Mr. Meekins' motion to withdraw was granted and attorney James Caviness was appointed as defendant's substitute counsel at the 15 February 2013 hearing.
On 9 April 2013, Mr. Caviness filed a motion to withdraw as counsel for defendant, as Mr. Caviness had a conflict preventing him from representing defendant. At the hearing on Mr. Caviness' motion to withdraw, Mr. Caviness informed the court that defendant desired to waive his right to appointed counsel, and would prefer to retain counsel on his own. Mr. Caviness was allowed to withdraw and defendant's case was continued from the 14-17 April 2014 session to the 2327 June 2014 session of court. Defendant signed a written waiver of appointed counsel. Defendant was instructed to return and inform the court on 5 June 2014 of who he had hired to represent himself.
At the 5 June 2014 hearing, defendant had not retained counsel. The trial court reminded defendant that his case was scheduled for trial on 23 June 2014 and defendant stated that he would be proceeding on his own. The trial court reminded defendant that he could not show up to trial, only then to demand a lawyer.
As he was leaving, defendant stated something to the effect that it seemed as though he was going to need to "get the NAACP" to help him. Judge Douglas B. Sasser called defendant back due to the commotion he was causing as he made the statement on his way out of the courtroom.
THE COURT: Tell me why I'm not going to put you in jail for mouthing off when you went out the door.
THE DEFENDANT: I think that-I said, seem like I'm gonna have to get the NAACP with me.
....
THE COURT: Once again, I watched. You're doing hand gestures at me in the courtroom. I call you up. Belligerent attitude, to put it mildly, right now. And then when I tell you to be prepared, you don't want a lawyer, make sure you're prepared for trial, to come back in, and then you're saying something on the way out of the courtroom.
THE DEFENDANT: No, I was saying-I was saying to myself the words, seem like I got to get somebody else to help me, because I-I'm trying my best.
The trial court held defendant in criminal contempt of court and ordered twenty-four hours in custody, citing hand gestures defendant had made toward the judge earlier in the day and defendant's belligerent attitude toward the court as he was leaving. The trial court again reminded defendant that his trial was set for 23 June 2014.
THE COURT: You'd better understand me to say, you don't disrupt the court. "Don't talk unless you're talked to" means don't do it.
Criminal contempt of court, 24 hours, one day. When you get back out, once again, be ready for June 23rd. When you come in, I again strongly suggest, you really ought to go ahead and-you've waived. You ought to hire a lawyer, but if you choose-
THE DEFENDANT: Well, can I-
THE COURT:-to represent yourself, just be prepared that you've got to handle the trial yourself.
On 23 June 2014, defendant appeared before Judge Adams without a lawyer. Defendant informed the court that he needed a lawyer. The parties were asked to return the next morning for their trial. The next day, defendant repeatedly stated that he needed a lawyer, and at one point defendant stated he had hired a lawyer. However, no lawyer showed up. The court held defendant had "forfeited [his] right to counsel by [his] abusive conduct, destructive conduct and by [his] own actions," which caused delay of trial. Defendant thereafter repeated that he needed a lawyer throughout trial.
Trial commenced and defendant did not present witnesses, did not cross-examine witnesses, present evidence on his behalf, and at times did not even respond to requests by the trial court. The jury found defendant guilty of assault with a deadly weapon inflicting serious injury, to which he stated, "[y]our Honor, I'm going to file an appeal." On 30 June 2014, a letter sent by defendant on 26 June 2014 was filed in the Columbus County Clerk of Court's Office stating that defendant was "asking for an appeal."
II. Discussion
Under Rule 4 of the North Carolina Rules of Appellate Procedure, a party may file notice of appeal in a criminal case by either giving oral notice of appeal at trial or by filing a written notice of appeal within fourteen days after entry of judgment with the clerk of superior court. "A Notice of Appeal is distinct from giving notice of intentto appeal.... Notice of Appeal is a procedural appellate rule, required in order to give 'this Court jurisdiction to hear and decide a case.' " State v. McBride,120 N.C.App. 623, 625, 463 S.E.2d 403, 405 (1995) (citations omitted). "[A] jurisdictional default, such as a failure to comply with Rule 4, 'precludes the appellate court from acting in any manner other than to dismiss the appeal.' " State v. Hammonds,218 N.C.App. 158, 162, 720 S.E.2d 820, 823 (2012) (quoting Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008) ). In the case at hand, defendant indicated his intentto appeal at trial when he stated "I'm going to file an appeal." This statement does not satisfy the requirements of Rule 4 as it merely indicates intent to appeal, not notice of appeal.
Written notice of appeal must
specify the party or parties taking the appeal; shall designate the judgment or order from which appeal is taken and the court to which appeal is taken; and shall be signed by counsel of record for the party or parties taking the appeal, or by any such party not represented by counsel of record.
N.C. R.App. P. 4(b) (2013). After judgment was entered against defendant, he wrote a letter stating that he wanted to appeal. Though the letter was filed with the clerk of court within the fourteen day time limit it did not state the judgment he wanted to appeal or the court to which he attempted to appeal. The letter was insufficient to invoke this Court's jurisdiction.
Defendant requests this Court to grant his petition for writ of certiorari regarding judgment entered against him in Columbus County Superior Court on 24 June 2014 pursuant to Rule 21 of the Rules of Appellate Procedure. "Rule 21(a)(1) provides that a writ of certiorari may issue to permit review of judgments and orders of trial tribunals 'when the right to prosecute an appeal has been lost by failure to take timely action....' The power to do so is discretionary and may only be done in 'appropriate circumstances." ' Hammonds,218 N.C.App. at 162, 720 S.E.2d at 823 (quoting N.C. R.App. P. 21(a) ). We exercise our discretion to allow defendant's petition for writ of certiorari and address the merits of defendant's appeal.
Defendant raises the following issues on appeal: whether the trial court erred in A) failing to make a proper inquiry of his election to proceed pro se;B) finding he waived his right to appointed counsel; C) finding he forfeited his right to counsel; and, D) improperly calculating his prior record level for sentencing.
A. Election to Proceed Pro Se
Defendant first asserts that the trial court erred in failing to make a thorough inquiry of his decision to proceed pro se,as required by N.C. Gen.Stat. § 15A-1242. We disagree.
The Sixth and Fourteenth Amendments to the United States Constitution guarantee an accused the right to assistance of counsel at trial. A criminal defendant likewise has a constitutional right to waive assistance of counsel and conduct his own defense, should he elect to do so. Faretta v. California,422 U.S. 806, 814, 45 L.Ed.2d 562, 570 (1975). Where a criminal defendant requests to proceed pro se,the court is required to conduct an inquiry pursuant to N.C.G.S. § 15A-1242. However, a "defendant's waiver of the right to counsel and election to proceed pro semust be expressed clearly and unequivocally." State v. Fulp,355 N.C. 171, 175, 558 S.E.2d 156, 159 (2002) (citation and quotation marks omitted). As a result, no N.C.G.S. § 15A-1242 inquiry is required where a criminal defendant does not clearly and unequivocally elect to proceed pro se. State v. McGuire,297 N.C. 69, 83, 254 S.E.2d 165, 174, cert. denied,444 U.S. 943, 62 L.Ed.2d 310 (1979).
In the case at hand, defendant did not make a clear and unequivocal election to proceed pro se.When he signed a written waiver of assigned counsel on 9 April 2013, defendant checked the box next to waiver of assistance of assignedcounsel, rather than the box next to waiver of assistance of allcounsel. It is well established that "[s]tatements of a desire not to be represented by court-appointed counsel do not amount to expressions of an intention to represent oneself...." State v.. McCrowre,312 N.C. 478, 480-81, 322 S.E.2d 775, 777 (1984) (citing State v. Hutchins,303 N.C. 321, 339, 279 S.E.2d 788, 800 (1981) ). Defendant then asked for 60 days to hire his own lawyer and was instructed to return 5 June 2014 to inform the court of who he had retained.
When defendant returned 5 June 2014, the following colloquy took place:
THE COURT: All right. Mr. Reaves, Mr. Caviness was allowed to withdraw. You're going to hire your own attorney.
The case is set for June 23rd for trial. Who is your lawyer?
THE DEFENDANT: He did that some months ago, got off my case. I'm here now to ask for a dismissal, because I'm representing my own self. And the State had over a year and a half to get-have their evidence, and they don't have no witness or evidence.
THE COURT: It's set for trial June 23rd. And as I told you, June 23rd, either you have a lawyer or you're trying the case yourself on this.
Now, I also told you these are serious charges, and the Court can't help you try the case.
THE DEFENDANT: The court has had-not had no witness or victims in a year and a half. I had a lawyer. My lawyer did not come to the court with that, so I'm representing myself to see what's-some better results, because the lawyer ain't did nothing in almost two years. Ain't no victims or witness been here in two years; it's just been me. So the State had plenty of time to-it's-
THE COURT: Understand, they don't have to be here until June 23rd. And if they walk in on June 23rd-
THE DEFENDANT: It don't make-
THE COURT:-and we start picking a jury, and at that point, you don't say, oh, time out; I need to get a lawyer.
THE DEFENDANT: And I-I'm ready now. I been ready. I been ready a year and something ago.
THE COURT: Once again, on June 23rd, you don't want-you're not hiring a lawyer. You're going to come in on your own. And you know how to pick a jury and you know how to present evidence and you know how to cross-examine folks. You understand the rules of law.
THE DEFENDANT: I've been-I've been crooked out of my life for a lot over here in Whiteville. I know how to do all that.
THE COURT: That's good. I'm telling you, you've got between now and June 23rd. You need to go back in and possibly study in the library and make sure, because the Court can't help you at all.
THE DEFENDANT: I went to the law library in prison.
THE COURT: All right. You're good, then. June 23rd.
THE DEFENDANT: Thank you, sir.
THE COURT: June 23rd for trial. Make sure you're here.
When defendant walked out of the courtroom after waiving his right to assistance of appointed counsel, he expressed how he needed to "get the NAACP with me" and how he needed to find someone to help him. Though defendant stated that he was not going to hire counsel in his hearing, he also told the court that he was going to have to get someone to help him with his case. Though it is unclear exactly what defendant meant by "help" with his case, it is enough to render his earlier statement no longer a "clear and unequivocal" election to proceed pro se.
Thereafter, the court held defendant in criminal contempt for the disruption and advised him to hire a lawyer, "but if you choose ... to represent yourself, just be prepared that you've got to handle the trial yourself." The court did not find defendant's statement that he was going to represent himself to be a waiver, nor as an election to proceed pro seat the 5 June 2014 hearing. It did not consider defendant to have waived his right to all counsel at trial on 23 June 2014, when it stated "[y]ou have waived counsel and indicated you wanted to proceed on your own or you would retain counsel."
Considering all of defendant's statements and actions together, the trial court did not err when it did not conduct a thorough inquiry of defendant's decision to proceed pro sepursuant to N.C.G.S. § 15A-1242 because defendant did not clearly and unequivocally elect to proceed pro se.
B. Waiver of Right to Counsel
Defendant argues the trial court erred in finding that defendant signed a waiver of his right to counsel. We disagree.
"When a written waiver has been signed by the defendant and certified by the court, this Court must presume the waiver of counsel was knowing, intelligent and voluntary unless the record indicates otherwise." State v. Quick,179 N.C.App. 647, 649, 634 S.E.2d 915, 917 (2006) (citations omitted). A waiver of counsel is valid "unless the defendant himself makes known to the court that he desires to withdraw the waiver and makes a showing that the change of mind to proceed (with or without an attorney) was for some good cause." State v. Hoover,174 N.C.App. 596, 598, 621 S.E.2d 303, 304 (2005) (citations and quotation marks omitted). "The trial court must weigh the cause for which defendant requests to withdraw his waiver, with due consideration to the defendant's timing of the motion and the court's need to conduct its business in an orderly and timely fashion." State v. Rogers,194 N.C.App. 131, 138, 669 S.E.2d 77, 82 (2008).
In the present case, defendant signed a written waiver of appointed counsel and informed the court that he was going to hire his own lawyer. Defendant does not contest the validity of his written waiver of assigned counsel.
Defendant lost his right to appointed counsel when he elected to proceed with private counsel at the 5 June 2014 hearing. Alternatively, even though he indicated his desire to have counsel appointed at trial on 23 June 2014, he did not formally withdraw his waiver of appointed counsel. Even if defendant had, he failed to provide a "good cause" reason for delaying his request until the day of trial. As such, defendant's waiver remained intact.
C. Forfeiture of Right to Counsel
Defendant asserts that the trial court erred in finding he forfeited his right to counsel through his conduct. Defendant argues the trial court's belief that defendant's second appointed lawyer, Mr. Caviness, withdrew because of irreconcilable differences when he actually withdrew because of a conflict, misguided its finding that defendant forfeited his right to counsel.
"The standard of review for alleged violations of constitutional rights is de novo." State v. Leyshon,211 N.C.App. 511, 514, 710 S.E.2d 282, 286 (2011) (quoting State v. Graham,200 N.C.App. 204, 214, 683 S.E.2d 437, 444 (2009) ). The right to assistance of counsel is protected by both the Sixth Amendment of the United States Constitution and Article I, Section 23 of the North Carolina Constitution. However, this right can be lost. "Any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel." Quick,179 N.C.App. at 649-50, 634 S.E.2d at 917. "A defendant must be granted a reasonable time in which to obtain counsel of his own choosing, and must be granted a continuance to obtain counsel of his own choosing where, through no fault of his own, he is without counsel." State v. Montgomery,138 N.C.App. 521, 524, 530 S.E.2d 66, 68 (2000).
Although the loss of counsel due to defendant's own actions is often referred to as a waiver of the right to counsel, a better term to describe this situation is forfeiture. Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. A forfeiture results when the state's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combine[ ] to justify a forfeiture of defendant's right to counsel.
Id.at 524, 530 S.E.2d at 69 (internal citations and quotation marks omitted). When a defendant has forfeited his right to counsel, "the trial court [is] not required to determine, pursuant to [N.C.]G.S. § 15A-1242, that defendant had knowingly, understandingly, and voluntarily waived such right before requiring him to proceed pro se." Id.at 525, 530 S.E.2d at 69.
In the present case, defendant's negligence and indifference, when combined with the State's interest in maintaining an orderly trial schedule, justify a forfeiture of his right to counsel. Defendant was appointed counsel twice before he elected to sign a written waiver of appointed counsel. Defendant's first attorney was forced to withdraw due to defendant's abusive conduct and his second was forced to withdraw due to a conflict. The trial court asked defendant whether thirty days was enough time for him to find counsel of his own, to which he replied "[p]robably 60." Defendant was granted a two and a half month continuance (seventy-five days) to retain private counsel, and he was told to return after fifty-seven days to inform the court who he had retained.
When defendant returned on 5 June 2014, fifty-seven days after his election to retain private counsel, defendant had not yet hired a lawyer. He said he was going to represent himself, but as he was leaving the courtroom he caused a commotion in which he also stated that he needed to find someone to help him. Defendant showed up late on the day of trial and still had not retained counsel. He offered no explanation; instead, defendant repeatedly stated that he needed a lawyer and refused to cooperate with the court throughout the course of his trial.
Based on the evidence in the record, we conclude defendant's willful conduct resulted in the absence of defense counsel. Defendant was twice appointed counsel as an indigent, and after the second was allowed to withdraw due to a conflict, defendant elected to waive his right to appointed counsel. Further, defendant was granted multiple continuances, including a two and a half month continuance on 9 April 2014, so that defendant may obtain private counsel. However, on 23 June 2014, defendant appeared at trial without representation, demanding counsel be appointed. Accordingly, defendant forfeited his right to counsel, and the trial court did not err by requiring defendant to proceed at trial pro se.
D. Prior Record Level Calculation
Defendant argues, and the State concedes, his prior record level was improperly calculated. "This Court applies a harmless error analysis to improper calculations of prior record level points." State v. Lindsay,185 N.C.App. 314, 31516, 647 S.E.2d 473, 474 (2007). The trial court sentenced defendant as a prior record level V offender with fifteen prior record points. However, the parties agree that the trial court improperly assigned at least two points: one point pursuant to N.C. Gen.Stat. § 15A-1340.14(b)(6) and another for defendant's prior South Carolina conviction for an offense listed as "AOF"[1] on his prior record level worksheet. This leaves defendant with thirteen points, putting defendant at a prior record level IV under N.C.G.S. § 15A-1340.14(c)(4). Defendant further argues that the trial court erred in including two additional prior record points because the State did not establish that a prior South Carolina offense listed on his Division of Criminal Information ("DCI") printout as "assault with intent to kill" is a felony in South Carolina or that it is substantially similar to an offense classified as a Class I felony in North Carolina.
N.C.G.S. § 15A-1340.14(e) (2013) governs how out-of-state convictions are treated for prior record level sentencing:
If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in [another] jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1 or Class 1 misdemeanor in North Carolina, the conviction is treated as a Class A1 or Class 1 misdemeanor for assigning prior record level points.
"[A] copy of the records maintained by the Division of Criminal Information [ ... ] is prima facie evidence that the offender named is the same person as the offender before the court, and that the facts set out in the record are true." N.C.G.S. § 15A-1340.14(f) (2013). "[D]etermination of whether the out-of-state conviction is substantially similar to a North Carolina offense is a question of law involving comparison of the elements of the out-of-state offense to those of the North Carolina offense." State v. Sanders,367 N.C. 716, 720, 766 S.E.2d 331, 334 (2014) (quoting State v. Fortney,201 N.C.App. 662, 671, 687 S.E.2d 518, 525 (2010) ).
In the present case, the record does not show that all of the elements of the present offense, assault with a deadly weapon inflicting serious injury, are included in any prior offense for which defendant has been convicted. The trial court erred in assigning an additional point pursuant to N.C. Gen.Stat. § 15A-1340.14(b)(6). Further, the record does not indicate that the State fulfilled its burden in showing defendant's previous South Carolina misdemeanor conviction listed on the prior record worksheet as "AOF" is substantially similar to a Class A1 or Class 1 misdemeanor offense under North Carolina law. Thus, the trial court erred in assigning an additional prior record level point for this South Carolina conviction. As a result, the trial court erred in assigning at least two prior record level points to defendant.
In his last argument, defendant argues that the trial court erred in determining his prior record level points because the State failed to prove that assault with an intent to kill is a felony in South Carolina. Defendant's argument, valid or not, will not affect defendant's sentencing level in light of the trial court's errors above, and is therefore harmless error. Lindsay,185 N.C.App. at 316, 647 S.E.2d at 474. The trial court assigned 15 points for defendant's previous convictions to place him at a prior record level of V, which ranges from 14 to 17 points. N.C.G.S. § 15A-1340.14(c)(5). Prior record level IV ranges from 10 to 13 points, so by deducting two points for the errors above, defendant would be sentenced at a prior record level of IV with a point total of 13. SeeN.C.G.S. § 15A-1340.14(c)(4). If defendant is correct that the trial court erred in assigning two additional points because the State did not prove assault with intent to kill is a felony in South Carolina, defendant would have 11 points but would remain within the sentencing level IV range.
Defendant was not sentenced in the proper presumptive range and is entitled to a new sentencing hearing. Accordingly, we vacate the trial court's sentence and remand for a new sentencing hearing.
AFFIRMED IN PART, VACATED AND REMANDED IN PART.
Judge CALABRIA concurs.
Judge DIETZ concurs with separate opinion.
Report per Rule 30(e).

It appears "AOF" refers to "Assault On a Female," a class A1 misdemeanor in North Carolina.